**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**VICTORIA B., o/b/o A.C.B.,**

**Plaintiff,**

                                      **Case No. 1:24-cv-00443-TK**

     **v.**

**COMMISSIONER OF SOCIAL**             **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

This case is before the Court for the second time.  In an order dated January 5, 2023, the Court remanded the case to the Commissioner for further proceedings because the ALJ improperly conflated two separate lines of analysis relating to a claim for child's benefits.  *See Victoria B. o/b/o A.C.B. v. Comm'r of Soc. Sec.*, 2023 WL 110111 (W.D.N.Y. Jan. 5, 2023).  Following remand, an ALJ rendered a final decision on December 29, 2023.  After filing the complaint, Plaintiff moved for judgment on the pleadings on January 6, 2025 (Doc. 14) and the Commissioner filed a similar motion on April 23, 2025 (Doc. 20).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant**.**

## I.  BACKGROUND

As the Court explained it its prior decision, the current application for supplemental security income was filed by Plaintiff, the child's mother, on October 30, 2017. After the first round of proceedings, and after the Court-ordered remand, the ALJ held a second administrative hearing on September 6, 2023.  Both Plaintiff and her child testified at that hearing.

On January 4, 2024, the ALJ issued an unfavorable decision.  In that decision, the ALJ found, first, that the child was a school-age child on the application date and an adolescent as of the date of the hearing.   Next, the ALJ found that she had not engaged in substantial gainful activity since the application date.  The ALJ determined that Plaintiff suffered from severe impairments including attention deficit hyperactivity disorder, learning disorder, unspecified bipolar disorder, unspecified anxiety disorder, oppositional defiant disorder, autism spectrum disorder, and primary generalized epilepsy/complex partial seizures, mainly absence seizure like episode.  The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving forward with the sequential evaluation process, the ALJ then evaluated these

impairments under the six areas (or domains of functioning) applicable to a child's application for benefits, which include acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. The ALJ found only one marked impairment in these domains, that being in the domain of interacting and relating to others, and concluded that her impairment in the remaining domains was less than marked. Because a finding of at least two marked limitations or one extreme limitation is necessary in order to grant a child's application for benefits, the ALJ found that the child was not disabled within the meaning of the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises a single issue, stated as follows:

> Failure to properly evaluate the opinion of state agency review pediatrician and the Commissioner's expert Dr. Stouter under 20 C.F.R. §416.920C.

Plaintiff's memorandum, Doc. 14-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

The Court summarized Plaintiff's testimony at the first administrative hearing in this way:

> Plaintiff first testified that she was the child's mother and that her child was ten years old and in the fourth grade. She was in special education classes consisting of eight students, one teacher, and one aide, and had an IEP. Plaintiff described her daughter as very hyper and also very sensitive to large groups. She was aggressive toward other children as well as toward herself and toward animals. The behaviors became more severe as her medication wore off during the day. Her mother said that she would isolate herself when around groups of people, even ones with whom she was familiar.
>
> The child's treatment consisted of multiple medications, all at the maximum dose for someone her age, and counseling at school. The child suffered from severe anxiety as well, including testing anxiety. She did not have friends at school and did not get along with her siblings. She did not sleep well and did not do household chores like cleaning her room. She also needed help with personal care. Her mother described frequent temper tantrums and said that the child needed instructions repeated constantly. She did not either initiate or complete tasks and appeared not to understand them. She also needed redirection and was easily distracted. It was difficult for the child to ride public transportation and she reacted negatively to sounds like music playing in a store, so her mother was

reluctant to take her places. She used noise canceling headphones at school to help minimize distractions. Plaintiff told the ALJ that the child had the normal type of disagreements with one of her brothers but would slap or punch the other for no reason at all.

*Victoria B., supra*, at *2.

At the second administrative hearing, Plaintiff testified that the child was now 13 years old and was in the eighth grade. She was in a special education program. The child suffered from anxiety which led to various behaviors including defiance and violence toward others. She also had days where she did not want to get dressed, eat, or leave the house. The child had been going to counseling but was subsequently discharged from services. However, she did receive counseling at school.

Plaintiff further testified that the child had made one friend outside of school but she did not leave the house to be with her friend. She also had issues with attention and hyperactivity and needed frequent redirection. She needed assistance when completing tasks and often experienced frustration. The child took medication for ADHD, for anxiety, and to help her sleep. She did not take part in any extracurricular activities at school.

The child also testified, and first said that she had friends but seldom saw them because she did not want to leave the house. She also acknowledged that she was easily distracted and said that she sometimes did not get along well with others. She had a pair of noise-reducing headphones that she would use while in school.

### B.  Documentary Evidence

The documentary evidence considered by the ALJ prior to the first administrative decision was described by the Court in its previous opinion as follows:

The child's first, second, third, and fourth grade teachers all completed questionnaires. In first grade, the child was performing academically at grade level but engaged in certain behaviors like talking to herself and throwing temper tantrums. She also did not get along well with others. The second grade evaluation did not indicate any obvious, serious, or very serious problems with her school performance, and noted that she was able to work well with minimal adult supervision, at least when she was on her medication. The child's third grade teacher did identify some obvious problems including reading below grade level and difficulty producing written material, needing constant prompting and redirection, shouting in class, difficulty relating to others, and avoiding distractions. No serious or very serious problems were identified, however. By the fourth grade, the child was performing at or slightly below grade level and had some serious attention problems. Whether she was on her medication made a big difference in her ability to attend to tasks. In each of these years, she had an IEP

-3-

which placed her in an 8-1-1 class and provided for additional accommodations, especially during testing.

Medically, the child had been diagnosed with oppositional defiant disorder and ADHD and was started on medications when she was very young. A psychological evaluation done when the child was five years old. At that evaluation, she was described as cooperative but active and impulsive and needing a good deal of support and encouragement. Her cognitive functioning was in the high average range but it was determined that she would benefit from a smaller, structured classroom setting as well as counseling.

The child underwent a pediatric physical examination on January 2, 2018, when she was seven. It was noted that her behavior and attention span were below age level but she did not have any physical limitations. A child psychiatric evaluation done the same day reported that the child was seeing both a doctor and a counselor for mental health issues and that she had issues sleeping and with maladaptive behavior. Her attention and concentration were problematic as well and she did not follow through with instructions or complete assignments. Anxiety and mood swings were also described as part of her history. On examination, she was hyperactive and loud and ran around the office. Her affect was manic and her insight and judgment were both poor. Her mother apparently reported that her daughter could not take care of her personal needs independently or assist with household chores. The examiner, Dr. Schaich, concluded that the child had a number of moderate mental limitations in the areas of peer and adult interaction, dealing with instructions, sustaining concentration, and completing tasks.

The child's medical treatment records show that she was consistently treated for ADHD and anxiety disorder with medications, and that the medications did help to control her symptoms although they tended to wear off during the day. She did have a seizure disorder but it was also well controlled with medication. There are a large number of notes from a counseling service as well, but they do not add significant information to the Court's review.

A state agency reviewer, Dr. Stouter, evaluated the medical and school records on file as of January, 2018, and concluded that the child had a marked limitation in the domain of attending and completing tasks, no limitation in the domain of acquiring and using information, and a less than marked limitation in the remaining four domains.

*Victoria B. o/b/o A.C.B. v. Comm'r of Soc. Sec.*, 2023 WL 110111, at *2–3 (W.D.N.Y. Jan. 5, 2023).

After remand, additional documents were made part of the record. They included an IEP

for the 2020-2021 school year which showed that the child had deficiencies in reading and writing and that she struggled with managing her anxiety and feeling overwhelmed. She needed some environmental modifications in the classroom, occupational therapy, and psychological counseling, and she was placed in special education classes in all subjects. That continued during the following school year as well. Her IEP for the 2023-24 school year showed that she had done well academically the previous year, that she was well-liked by her peers and had established positive relationships at school, and that she demonstrated motivation in a small class setting. However, she had difficulty completing assignments in a timely manner, was frequently absent from school, did not respond well to constructive criticism, and became easily overwhelmed. She was continued in special classes and in counseling.

A psycho-educational evaluation was done at the school in 2022. It was noted that the child needed frequent prompting and redirection in order to complete tasks and she needed further intervention in areas such as reading, math, and spelling. Additional teacher questionnaires were made a part of the record as well. One of them, completed by an eighth grade teacher and a counselor, indicated that the child had only a slight problem in acquiring and using information, multiple obvious problems in attending and completing tasks which occurred on a daily basis, a number of obvious problems in the area of interacting and relating to others, some slight problems in moving about and manipulating objects, and multiple obvious problems in caring for herself, including difficulties with handling frustration, calming herself, and using coping skills. She also was absent from school on a frequent basis.

The child underwent neuropsychological testing on March 8, 2021, when she was in the fifth grade. The child reported some anxiety at school and she had difficulty organizing and expressing her thoughts. On testing, her processing speed was exceptionally low. It appeared likely that she had autism spectrum disorder, fine motor coordination disorder, and specific learning disorder affecting math and reading. Counseling intervention was recommended and placement in a small class setting was suggested. Subsequent records from Catholic Health showed that the child had been prescribed medication to treat ADHD, which appeared to control that condition. Extensive counseling records indicate that the child's hyperactivity was significantly improved with medication, as was her sleep and mood. She was subsequently discharged from counseling at her mother's request.

### C. Opinion Evidence

The opinion of state agency reviewer Dr. Stouter is described above, as is the opinion of the consultative psychological examiner, Dr. Schiach. There are no other opinions of record apart from the conclusions reached in the documentary evidence summarized earlier in this decision.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

-5-

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

In *Victoria B., supra*, at *3-4. the Court set out the regulatory framework under which claims for child's disability benefits are analyzed.  The Court said this:

As stated in *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 422–23 (W.D.N.Y. 2019),

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. §

-6-

416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.' " *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

As noted, Plaintiff has raised only one claim of error with respect to the more recent administrative determination - that the ALJ did not properly evaluate the opinion of Dr. Stouter. She notes that under the current regulatory scheme, the factors of supportability and consistency are the most important determiners of the validity of an expert medical opinion, and argues that an ALJ must articulate how he or she has evaluated opinions based on a consideration of those factors. Here, according to Plaintiff, the ALJ did not apply those factors to Dr. Stouter's opinion that the child had a marked limitation in the area of attending and completing tasks, rejecting that conclusion without discussion even though Dr. Stouter's opinion was found to be persuasive and supported by the medical records. The Commissioner responds that the ALJ's decision was supported by the evidence summarized in her decision even though the ALJ did not, in the portion of the decision upon which Plaintiff focuses her argument, "specifically evaluate the consistency of Dr. Stouter's opinion in this domain...." Commissioner's Memorandum, Doc. 20, at 16.

In her analysis of this particular domain of functioning, the ALJ provided the following explanation:

The claimant has less than marked limitation in attending and completing tasks. The claimant, her mother and her teacher indicated that she has significant difficulty finishing tasks, is easily distracted and fidgets constantly. (Exhibit 12E, 13E, 29F/12, Testimony) In January 2020, she received individualized education plan (IEP) counselling 30 minutes every six days to address maintaining attention in class without shouting out. (Exhibit. 14E) The claimant's treatment records also have noted decreased attention and concentration. (Exhibits 4F/8, 18F/2-3) Also, consultative examinations in January 2018 indicated the claimant's attention span was below age level expectation and she was hyperactive with a manic affect. (Exhibit 5F, 6F3) However, the claimant has been treated for ADHD and her treatment notes show that she has improved with medications and or has no

> problems in the mornings. (Exhibits 4F/17-18, 9F/5, 8, 15, 24; 9F; 18F) Her mother also reported that that claimant is able to work on arts and craft projects. (Exhibit 4E/9) The treatment records mention that many of her symptoms are not from ADHD but from an inability to sleep due to anxiety, which as discussed below, is improved and well controlled. (See e.g., Exhibit 9F/4) Similarly, the claimant's teachers have also indicated that when the claimant is on her medication she is able to focus and complete her work with minimal adult support. (Exhibits 6E, 12E, 13E) Dr. Schaich noted the claimant's attention and concentration was only mildly impaired due to emotionality, she was able to do serial 3's, and was oriented to person, place, and time, which suggests no more than moderate limitations in attention and concentration. (Exhibit 6F/3) Thus, the evidence does not support the next higher degree of limitation.

(Tr. 1569). As Plaintiff notes, and the Commissioner concedes, this particular section of the ALJ's decision makes no mention of Dr. Stouter's conclusion that the child has a marked limitation in this area.

As this Court has said about the current regulations governing the analysis of medical opinion evidence,

> First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).
>
> Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.
>
> Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical

opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

*Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658, at *5 (W.D.N.Y. Mar. 14, 2022).

A recurring question in cases in which these regulations are applied is the extent to which an ALJ is required to explain how each medical opinion fits within the parameters of supportability and consistency. Generally, the failure to provide such an explanation is error; as this Court has also observed,

> [u]nder the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks [v. Kijakazi]*, 2022 WL 2189293 [(2d Cir. June 17, 2022)] at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.' " *Loucks*, 2022 WL 2189293 at *2 (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

*Sarah M.K. v. Comm'r of Social Security*, 2022 WL 4232880 (W.D.N.Y. Sept. 14, 2022).

Here, when the ALJ evaluated Dr. Stouter's opinion - which included the determination that the child had a marked impairment in the domain of attending and completing tasks - the ALJ said:

> I find the prior administrative medical findings at Exhibit 2A [which is Dr. Stouter's report] are persuasive, as they indicate the claimant's mental impairments are not disabling because they do not caused (sic) marked limitations in two domains or any extreme limitation. The prior administrative findings are generally consistent with their own review of the record and the objective findings cited at Exhibit 2A/6-7. Further, the overall medical evidence, normal physical examinations, and the claimant's treatment notes indicating improvement in mental symptoms with medication and treatment support the prior administrative medical findings. Additionally, the State agency physician and psychologist have unique, expert training in the evaluation of disability claims. However, considering the testimony of the claimant and her mother and the neuropsychological evaluation at Exhibit 19F, I find the claimant warrants less than marked limitation in acquiring and using information and marked limitation in interacting with others rather than in maintaining concentration, persistence and pace.

Tr. 1571.

There are three differences between Dr. Stouter's evaluation and the ALJ's findings. Dr.

Stouter concluded that the child had no limitation in the domain of acquiring and using information, a marked limitation the domain of attending and completing tasks, and a less than marked limitation in the remaining four domains.  The ALJ found that the child had a less than marked limitation in acquiring and using information - a finding that is more favorable to the child than Dr. Stouter opined - a less than marked limitation in attending and completing tasks, which is less favorable to the child - and a marked limitation in interacting and relating to others, which is more favorable to the child.  Her findings on the remaining three domains are identical to those of Dr. Stouter.  Obviously, Plaintiff is not contesting the fact that the ALJ found greater limitations than did Dr. Stouter in two domains of functioning, so the issue in this case comes down to whether the ALJ committed a procedural error when she found that, despite its overall persuasiveness, Dr. Stouter's opinion about the child's ability to attend and complete tasks overstated the degree of that limitation.

It is apparent that the ALJ erred by referring to this latter limitation as being in the area of maintaining concentration, persistence, and pace.  That is language more suited to the evaluation of an adult disability claim.  That error, however, may be disregarded because it is apparent to the Court that the ALJ meant her findings to apply to the domain of attending and completing tasks, because that is the area where she discounted Dr. Stouter's finding of a marked limitation.  Using the analysis set out in *Michael H., supra,* and *Sarah M.K., supra,* the issue then becomes whether the ALJ either provided a sufficiently explicit explanation of how the consistency and supportability factors led her to that conclusion, or whether the Court's "searching review of the record" supports the conclusion that the regulation's emphasis on supportability and consistency was not violated.

The Court concludes that the ALJ did not commit reversible error here.  The extended discussion of the evidence supporting the finding of a less than marked limitation in the area of attending and completing tasks, which cited to testimony from the child's mother, various treatment records indicating an improvement in her ADHD symptoms and sleep issues with medication, reports from her teachers, and the consultative examiner's opinion, all indicate that the ALJ considered whether a contrary conclusion - *i.e.* the one reached by Dr. Stouter - was supported by and consistent with the evidence.  The ALJ's discussion of Dr. Stouter's opinion, which noted that it was generally persuasive and consistent with the record except for the three areas where she and Dr. Stouter disagreed - also cites to testimony both from the child and her mother and to the neuropsychological evaluation, which noted that the child's attention on testing was broadly normal and that strategies such as smaller class size and extended time for testing would help to address any issues with task completion.  The IEPs show that some of these strategies have been implemented and that the child is able to achieve academically.  Under these circumstances, the Court's review of the record confirms that the ALJ did not traverse the substance of the regulations, and the Court is therefore required to affirm the ALJ's decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 14), **GRANTS** the Commissioner's motion (Doc. 20), and **DIRECTS** the Clerk

to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**